UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUTIU ADESINA OYELAKIN, <br><br> Plaintiff, <br><br> -against- <br><br> OFFICIALS OF IKEJA ELECTRIC DISTRIBUTION COMPANY (IKEJA ELECTRIC), LAGOS NIGERIA, A NON-GOVERNMENTAL BODY, *et al.*, <br><br> Defendants. | 22-CV-9680 (LTS) <br><br> ORDER OF DISMISSAL |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action alleging that Defendants tortured him and violated his rights. By order dated November 15, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees. Plaintiff also moved for appointment of *pro bono* counsel. (ECF 3.) For the reasons set forth below, the Court dismisses the complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Named as Defendants in this action are the following individuals and entities in Nigeria: Officials of Ikeja Electric Distribution Company; the Chairman/CEO of the Nigerian Electricity Regulatory Commission; the Attorney General of Nigeria; the Comptroller General; the Nigerian Immigration Service; the "Representative, Representing Alimosho Local Government of Large State in the Federal House Representing"; the Senator, "Representing Alimosho Local Government of Lagos State in the Federal House of Senate"; the Senate Committee on Constitutional Review; the Executive Secretive of the Consumer Protection Council; the "Ambassar" of the International Human Rights Commission; Magistrate Arkingbesote of Ebute Metta Magistrate; officials in the Office of the Chief Justice of Nigeria (CJN); the Permanent

Secretary, Lagos State Judicial Service Commission; officials in the Office of the Government of Lagos of Nigeria; and the Public Complaints Commission.

The following facts are drawn from the complaint. Defendants have subjected Plaintiff to "ongoing persecution, emotional torture, cruel and inhuman and degrading treatment and punishment by both non-government and government officials in Nigeria," resulting in his being "diagnosed with hypertension and depression." (ECF 2 at 2.) In March 2018, Defendant Ikeja disconnected Plaintiff's electricity in retaliation for his complaints about "arbitrary and discriminatory" billing, and also because of his advocacy on behalf of Muslim students in connection with school placement exams (*Id.* at 6-8.) Plaintiff requested an expedited hearing and an official response from Defendants regarding these matters; he never received any response, and Plaintiff claims that Defendants are denying him due process and are "administratively persecut[ing]" him. (*Id.* at 6-11.) Ikeja has repeatedly and falsely claimed to have resolved the problem with Plaintiff's electricity service, and falsely claimed to have installed a meter in his apartment. (*Id.* at 13.) According to Plaintiff:

> Persecution may take the form of the use of brute force, and may also take the form of administrative and/or judicial measures which either have the appearance of legality and are misused for the purposes of persecution, or are carried out in breach of the law.

(*Id.* at 58.) Plaintiff further asserts that Defendants are violating the terms of the Geneva Convention. (*Id.* at 59.) Attached to the complaint are documents and correspondence about Plaintiff's medications and efforts to seek redress from Defendants, documents arising from administrative and court proceedings, and screenshots of text messages. (*Id.* at 61-170.)

3

DISCUSSION

A.     **Foreign Sovereign Immunities Act**

Plaintiff's claims against the Defendants that are governmental entities in Nigeria are foreclosed by the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1330, 1602 *et seq*. The FSIA "is the exclusive source of subject matter jurisdiction in suits brought against a foreign state." *Matar v. Dichter*, 500 F. Supp. 2d 284, 288 (S.D.N.Y. 2007); *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("The Foreign Sovereign Immunities Act 'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'") (quoting *Argentine Republic v. Amareda Hess Shipping Corp.*, 488 U.S. 428, (1989)).

Nigeria is a "foreign state," *see* 28 U.S.C. § 1603(a), and with one exception, the entities named as Defendants are "agenc[ies] or instrumentalit[ies] of a foreign state,[1] *see* 28 U.S.C. §1603(b). Thus, Defendants are entitled to immunity from the jurisdiction of the courts of the United States unless one of the exceptions in section 1605 of the FSIA applies. Even granting Plaintiff's complaint the most liberal possible construction, his allegations do not fall within the purview of any of the exceptions set forth in the FSIA.[2] Therefore, the claims must be dismissed as these Defendants, as agencies or instrumentalities of a foreign state, are immune under the FSIA from the jurisdiction of the Court. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

---

[1] Plaintiff alleges that Ikeja Electric is a nongovernmental body. According to the Ikeja website, the government owns a 40% stake in the company. https://www.ikejaelectric.com. For purposes of this order, the Court will not consider Ikeja to be a governmental agency.

[2] The only exception to immunity even conceivably available is the tortious acts exception, which provides that a foreign sovereign may be sued for certain tortious acts occurring in the United States, *see* 28 U.S.C. § 1605(a)(5). The tortious acts exception, however, is obviously inapplicable here because the complaint alleges that these Defendants committed torts outside the United States which injured Plaintiff outside the United States. *See*, *e.g.*, *Argentine Republic*, 488 U.S. at 440-41.

B.     **Alien Tort Statute**

Plaintiff's claims under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), must also be dismissed. Under the ATS, the Court may exercise jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." In *Kiobel v. Royal Dutch Petroleum Co.*, however, the Supreme Court clarified that the ATS does not apply to claims where the alleged "violation of the law of nations occur[red] outside of the United States." 569 U.S. 108, 118 (2013) (holding that the "presumption against extraterritoriality applies to claims under the ATS, and that nothing in the statute rebuts that presumption"). "[I]f all the relevant conduct occurred abroad, that is simply the end of the matter under *Kiobel*." *Balintulo v. Daimler AG*, 727 F.3d 174, 190 (2d Cir. 2013); *see also Chowdhury v. Worldtel Bangladesh Holding Ltd.*, 746 F.3d 42, 49-50 (2d Cir. 2014) (plaintiff's claim brought under the ATS barred by *Kiobel* because all the relevant conduct set forth in the complaint occurred in Bangladesh).

Because the allegedly tortious conduct at issue occurred in Nigeria, this Court lacks jurisdiction to hear Plaintiff's claims under the ATS. *See id*. Plaintiff's ATS claims are therefore dismissed.

C.     **United Nations Convention Against Torture**

Plaintiff asserts claims under the United Nations Convention Against Torture. But the Convention is not self-executing. *See Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (citing the letter of transmittal from President Reagan recommending that the Senate adopt the Convention along with "a declaration that the Convention is not self-executing"). Because the Convention is not self-executing, it does "not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law." *Renkel v. U.S.,* 456 F.3d 640, 644 (6th Cir. 2006).

5

The United States implemented the Convention, to a limited extent, by enacting 18 U.S.C. §§ 2340 and 2340A. *Id.* While Sections 2340 and 2340A authorize criminal prosecutions for torture that occurred abroad, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Leeke v. Timmerman*, 545 U.S. 83, 85-86 (1981) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Dugar v. Coughlin,* 613 F. Supp. 849, 852 and n. 1 (S.D.N.Y. 1985) (no private right of action under federal criminal statutes). The domestic law implementing the Convention therefore does not create a private right of action. *See Renkel,* 456 F.3d at 644; *Buczek v. Bruce*, No. 09-CV-119S (WMS), 2011 WL 1899769, at *5 (W.D.N.Y. May 19, 2011) (citation omitted). Accordingly, Plaintiff's claims under the Convention Against Torture are dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.     Torture Victims Protection Act**

The Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992), imposes liability on "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation" subjects another individual to torture or extrajudicial killing. TVPA § (2)(a); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177-78 (2d Cir. 2014). The statute's definition of torture is "rigorous." *Mohammad v. Tarraf*, No. 02-CV-282A (RJA), 2007 WL 1040031, at *3 (W.D.N.Y. Apr. 4, 2007) (quoting *Price. v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002)).

The TVPA defines torture as

> any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is

6

suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.

TVPA § 3(b)(1); *Chowdhury*, 746 F.3d at 51-52. The statute's "severity requirement" is "crucial to ensuring that the conduct proscribed by . . . the TVPA is sufficiently extreme and outrageous to warrant the universal condemnation that the term 'torture' both connotes and invokes." *Price*, 294 F.3d at 93 (citation omitted).

The TVPA makes clear that "not all conduct falling under the journalistic and political rubric of 'police brutality,' whether here or abroad, can be described as 'torture.'" *Chowdhury*, 746 F.3d at 51-52. Moreover, "torture does not automatically result whenever individuals in official custody are subjected even to direct physical assault." *See Price*, 294 F.3d at 93. The term is "usually reserved for extreme, deliberate and unusually cruel practices, for example, sustained systematic beating, application of electronic currents to sensitive parts of the body, and tying up or hanging in positions that cause extreme pain." *Id*. at 92-93 (quoting S. Exec. Rep. No. 101-30, at 14 (1990)).

Courts have dismissed complaints under TVPA even where plaintiffs have alleged extreme examples of abuse. For example, in *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 232 (D.C. Cir. 2003), the plaintiff alleged that Libyan officials forcibly removed her and her husband from a cruise ship, imprisoned them for months, threatened them with death, and held them incommunicado. The United States Court of Appeals for the D.C. Circuit found that the acts were "not in themselves so unusually cruel or sufficiently extreme and outrageous as to constitute torture within the meaning of the [TVPA]." *Id*. at 234.

Similarly, in *Price*, the plaintiffs alleged that they were imprisoned for over 100 days, during which they endured deplorable conditions of confinement, "including urine-soaked mattresses, a cramped cell with substandard plumbing that they were forced to share with seven

7

other inmates, a lack of medical care, and inadequate food." 294 F.3d at 86. The plaintiffs alleged that their captors "kicked, clubbed and beat[ ]" them and "interrogated and subjected [them] to physical, mental and verbal abuse." *Id*. The D.C. Circuit directed dismissal of the TVPA claims and concluded that the allegations "do not reasonably support a finding that the physical abuse allegedly inflicted by Libya evinced the degree of cruelty necessary to reach a level of torture." *Id*. at 94. In so doing, the court emphasized that the complaint "offer[ed] no useful details about the nature of the kicking, clubbing, and beatings that plaintiffs allegedly suffered," leaving the Court "no way to determine … the severity of plaintiffs' alleged beatings – including their frequency, duration, the parts of the body at which they were aimed, and the weapons used to carry them out – in order to insure that they satisfied the TVPA's rigorous definition of torture." *Id*. at 93.

Plaintiff has not alleged that he was tortured as that term is defined by the TVPA. Plaintiff states that his electricity was cut off after he complained about discriminatory and arbitrary billing and advocated on behalf of the education rights of Muslim students, the stress of which caused him to suffer with hypertension and depression requiring medication. These allegations do not give rise to an inference that Plaintiff has been subjected to the type of extreme and outrageous physical force necessary to state a claim under the TVPA.

**LEAVE TO AMEND DENIED**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

**LITIGATION HISTORY AND WARNING**

Plaintiff has previously filed cases in this Circuit against foreign governments, including Nigeria, under the ATS and the United Nations Convention Against Torture. *See Ayobola aka Oyelakin v. United States*, ECF 1:12-CV-8950, 7 (LAP) (S.D.N.Y. Mar. 25, 2013) (dismissing claims on immunity grounds under the FSIA, dismissing on the merits ATS claim), *appeal dismissed as frivolous*, No. 13-2028 (2d Cir. Nov. 13, 2013), *recons. denied* (S.D.N.Y. June 18, 2014); *Oyelakin v. Reno*, ECF 1:12-CV-8951, 6 (LAP) (S.D.N.Y. Mar. 7, 2013) (dismissing on the merits claims under 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Convention Against Torture, and ATS), *appeal dismissed as frivolous*, No. 14-2622 (2d Cir. Jan. 20, 2015).

In light of the dismissals of Plaintiff's two prior cases raising similar claims, the Court finds that Plaintiff was or should have been aware of the defects of his complaint when he filed it. *See Sledge v. Kooi*, 564 F.3d 105, 109-110 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigant may be charged with knowledge of particular legal requirements). Plaintiff cannot repeatedly file the same claims in an attempt to obtain a different result. To discourage him from further abusing the privilege of filing civil suits in this court, Plaintiff is warned that, should he file another complaint asserting claims that are determined to be duplicative, frivolous, vexatious, or otherwise lacking in merit, the Court will order him to show cause why he should not be barred, under 28 U.S.C. § 1651, from filing new civil actions in this court IFP without prior permission from the court.

**CONCLUSION**

Plaintiff's claims are dismissed for failure to state a claim on which relief may be granted, and on immunity grounds. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The motion for *pro bono* counsel is denied as moot. (ECF 3.)

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is directed to enter judgment in this case.

SO ORDERED.

Dated:   February 27, 2023
         New York, New York

                                         /s/ Laura Taylor Swain
                                         LAURA TAYLOR SWAIN
                                         Chief United States District Judge